IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALTAI THORNTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No.   14-cv-127-MJR-SCW ) |
| JOHN SHEPHERD, SALVIDOR GODINEZ, MICHAEL P. ATCHISON, and ERIC JOHNSON, | ) ) ) ) |
| Defendants. | |

MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

INTRODUCTION

Pursuant to **42 U.S.C. § 1983**, Altai Thornton filed a *pro se* amended complaint alleging that the defendants delayed and denied proper medical care after he was stabbed in the right eye, face, and head during an inmate altercation at Menard Correctional Center.  Plaintiff claims that Defendants delayed a follow-up MRI on Plaintiff's eye that was part of his treatment plan and failed to remove his stitches, causing Plaintiff to be in pain longer than necessary. This matter is before the Court on summary judgment motions filed by Defendant John Shepherd (Docs. 58 and 59) and Defendants Salvidor Godinez and Michael P. Atchison (Docs. 61 and 62).   Plaintiff has filed a response (Doc. 69) in opposition to the motions.

**FACTUAL BACKGROUND**

Plaintiff's amended complaint, as narrowed by the Court's threshold order, alleges that on March 19, 2012, Plaintiff was stabbed in the right eye, head and face by another inmate. (Doc. 59-3, p. 1). He was taken to the infirmary and referred to a physician. *Id.* Additionally, Dr. Larson was informed of Thornton's condition at that time and was to be called if Thornton's condition changed before his appointment with a doctor. *Id.* Thornton saw Dr. Shepherd the following morning, March 20, at 8:00am. (Doc. 59-3, p. 2) Dr. Shepherd examined Thornton and referred him to the on-site optometrist, Defendant Eric Johnson.[1] Dr. Johnson examined Thornton at 8:30am and referred Thornton to an outside ophthalmologist to be seen as quickly as possible (Doc. 59-3, p. 3). Thornton was taken to see Dr. Umana at the Marion Eye Center that day. (Doc. 59-4, p. 2).

Dr. Umana ordered a CT scan, after requesting and receiving approval for the scan from the prison (Doc. 59-4; 69, p. 2-3), and operated on Thornton's eye that day, repairing damage to the right eye and lower right lid (Doc. 59-5). Dissolving stitches were left in Thornton's eye, and non-dissolving stitches were used for Thornton's lower right lid. (Doc. 59-2, p. 13-14). Thornton was discharged and returned to Menard with a plastic eye shield and eye drops. (Doc. 59-2, p. 7). On the morning after surgery, March 21, 2012, Dr. Nwaobasi changed Thornton's dressings at Menard. (Doc. 59-3, p. 4). On

---

[1] Defendant Eric Johnson has never been served in this case. The Court was not able to locate Eric Johnson at any of his known addresses and Plaintiff has not provided any further information to locate Johnson. A notice of impending dismissal is currently pending as to Eric Johnson (Doc. 75).

March 22, Thornton returned to Dr. Umana's office for a follow-up visit. (Doc. 59-6). Dr. Umana requested a repeat CT scan or an MRI of Thornton's head and eye "ASAP." *Id.*

The following day, March 23, 2012, Thornton was seen by Dr. Nwaobasi, who noted that he was to be scheduled for an MRI (Doc. 59-3, p. 5). Thornton was seen again by another physician (the identity of that doctor is not clear from the medical records but is believed to be Dr. Fuentes) on March 26, and it was noted that the request for an MRI would be sent to collegial review for approval (*Id*. at p. 6). Dr. Shepherd saw Thornton on March 27, 2012, and noted that an MRI was recommended (Doc. 59-3, p. 7). On March 28, 2012, Dr. Umana's office contacted the prison about the ordered MRI (Doc. 59-7, p. 1). A nurse at the prison examined Thornton that day, as well, and noted complaints of throbbing eye pain (*Id*. at p. 8). The note indicates that Dr. Shepherd and Dr. Fuentes were spoken to about the pain and that Thornton was to continue with his current pain management plan (*Id*.). Dr. Shepherd noted in Plaintiff's medical chart the following day, March 29, 2012, that collegial review approved the MRI (Doc. 59-3, p. 9). On April 3, 2012, the medical records indicate that Plaintiff was scheduled for an MRI (Doc. 59-3, p. 11). During this time period, Thornton remained in the healthcare unit and was seen daily by nurses and doctors, until his release on April 18, 2012 (*Id*. at p. 5-12; 59-9).

Thornton's medical records indicate that his MRI was scheduled for April 10, 2012, and that he saw Dr. Umana on April 5, 2012, while waiting for his MRI. (Doc. 59-3, p.11; Doc. 59-8). During his visit at Dr. Umana's office, Thornton complained of throbbing pain, noted as a nine on a ten point scale. Despite Thornton's pain level, Dr.

3

Umana did not remove Thornton's stitches during the office visit, nor did he indicate that the prison healthcare staff should remove the stitches. (Doc. 59-8, Doc. 59-2, p. 14; 59-1, p.3). Thornton received an MRI on April 10, 2012, as scheduled, and returned for a follow-up appointment with Dr. Umana on May 3, 2012. (Doc. 59-2, p. 14, Doc. 59-10). Dr. Umana removed Thornton's non-dissolving stitches and requested a follow-up in three months. (Doc. 59-10, Doc. 59-2, p. 13-14). It was noted at that time that Thornton's pain was improving and that the MRI results were pending. (Doc. 59-10). Defendant Shepherd also noted in his affidavit that Dr. Umana never recommended further surgery based on the results of the MRI performed on April 10, 2012 (Doc. 59-1, p. 3). Thornton saw Dr. Johnson on May 15, 2012, and Johnson noted that Thornton was improving. (Doc. 59-3, p. 13). Thornton was prescribed Tylenol for his pain and testified at this deposition that he was provided with pain medication every time he complained that he was in pain. (*Id.*, Doc. 59-2, p. 8).

On April 30, 2012, between the date of his MRI and the date of his follow-up with Dr. Umana, Thornton filed an emergency grievance to Defendant Atchison, warden at Menard Correctional Center, regarding the delay in receiving an MRI and the pain in his eye. (Doc. 62-3, p. 3). He complained about not receiving his MRI until April 10, 2012, even though Dr. Umana had declared that he needed an MRI "ASAP" during his March 22 appointment (*Id*. at p. 4-5). Plaintiff indicated that he had not been seen by either Dr. Shepherd or the eye doctor since April 13, 2012, and that he was in pain from his eye and from the stitches, which he believed should be removed (*Id.* at p. 5). Atchison deemed

4

the grievance an emergency, but ultimately it was denied (*Id*. at p. 4). In denying it, the grievance officer noted that Thornton received his MRI and that the follow-up appointment with Dr. Umana was moved up to early May from June (*Id*.). It also noted that the decision whether to remove the stitches was a medical issue to be determined by Dr. Umana (*Id*.). The Administrative Review Board and Defendant Godinez also denied the grievance, noting that Plaintiff was seen by the eye doctor, Dr. Johnson, at Menard on March 20, 2012, and referred to the Marion Eye Center. (*Id.* at p. 1). The ARB noted that the Marion Eye Center saw Thornton in March, April, May, and August, and that Thornton received eyeglasses from the prison in August 2012 (*Id*. at p. 1).[2]

There is no indication in the record whether the requested follow-up to the May 3 appointment with Dr. Umana ever occured, but Thornton states in his response that it did not. Thornton's amended complaint, however, focuses solely on the twenty day delay from Dr. Umana's first recommendation for a follow-up MRI on March 22, 2012, through the date Thornton received the MRI on April 10, 2012, arguing that the delay of the MRI and the delay in removing his stitches caused him constant pain.

## LEGAL STANDARDS

**A. Summary Judgment Standard**

Summary Judgment is "appropriate if the admissible evidence considered as a

---

[2] Although the ARB indicated that Plaintiff was seen by Dr. Umana in August, it appears from the email chain between the ARB and the prison that Plaintiff was actually seen by Dr. Johnson in August and received glasses from him (Doc. 62-3, p. 3).

5

whole shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson,* 477 U.S. at 248.** In response, a nonmoving party "must present something more than a mere scintilla of evidence or some metaphysical doubt as to the material facts to survive summary judgment." ***Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. ***Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; **Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available

evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

   B. **Deliberate Indifference**

The Eighth Amendment to the Constitution prohibits cruel and unusual punishment. In the context of an inmate's medical care, prison officials violate the Eighth Amendment's proscription if "they display deliberate indifference to an inmate's serious medical needs." *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005) (quoting** *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted)).** *Accord Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.")**. A prisoner is "entitled to reasonable measures to meet a substantial risk of serious harm" ─ not to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011),** *citing Johnson v. Snyder*, **444 F.3d 579, 584 (7th Cir. 2006).** First, a prisoner must demonstrate that he has an "objectively serious medical condition." *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at 653.** An "objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a

7

doctor's attention." *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008). A "medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." **Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).**

Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. **Greeno v. Daley, 414 F.3d 645, 652–53 (7th Cir. 2005).** The subjective prong has two components: an "official must have subjective knowledge of the risk to the inmate's health, and the official must disregard that risk." *Gayton v. McCoy,* 593 F.3d at 620. A prisoner must prove that "prison officials acted with a sufficiently culpable state of mind." **Greeno, 414 F.3d at 653 (internal quotation marks and citation omitted).** The plaintiff need not show the defendant "literally ignored" his complaint, just that the defendant was aware of the serious medical condition and the defendant's "responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." **Hayes v. Snyder, 546 F.3d 516, 524 (7th Cir. 2008)(citing** *Greeno,* **414 F.3d at 653).**

A delay in medical treatment can constitute deliberate indifference if the medical condition is sufficiently serious or painful. *See Grieveson v. Anderson,* **538 F.3d 763, 779-80 (7th Cir. 2008)(failure to obtain medical attention for inmate with broken nose for one and a half days could constitute a delay in treatment and deliberate indifference);** *Berry v. Peterman,* **604 F.3d 435, 441 (7th Cir. 2010) ("A significant delay**

**in effective medical treatment may also support deliberate indifference . . . where the result is prolonged and unnecessary pain.").** However, the inmate must provide evidence that the defendant's failures caused his injury or pain. "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson v. Pollion*, **733 F.3d 786, 790 (7th Cir. 2013) (internal citations omitted).** No party disputes that Thornton's eye injury was an objectively serious medical need that satisfies the first prong of the test. Accordingly, the issues before the Court are whether there were any delays in Thornton's care that rise to the level of deliberate indifference.

## ANALYSIS

### A. John Shepherd

Plaintiff's complaint alleges that John Shepherd was deliberately indifferent because he improperly delayed Plaintiff's second MRI, which did not take place until April 10, 2012, and failed to remove Plaintiff's stitches, causing Plaintiff further pain. While a delay in medical treatment can constitute deliberate indifference, ***see Grieveson v. Anderson*, 538 F.3d 763, 779-80 (7th Cir. 2008); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010),** in this case, the Court finds no delay attributable to Dr. Shepherd. As to the MRI, the medical records indicate that Dr. Umana recommended an MRI during

9

follow-up appointment with Thornton on March 22, 2012. On March 23, 2012, notes in Thornton's medical records indicate that Dr. Nwaobasi noted he was to be scheduled for an MRI. The records from March 26, 2012, indicate that the MRI request was referred for collegial review. Dr. Shepherd saw Thornton for the first time the following day, March 27, and noted at that time that the MRI was recommended. There is no indication from the record that Dr. Shepherd was aware of the MRI recommendation prior to March 27, 2012. The medical records also note that the request for an MRI was approved on March 29, shortly after Thornton first saw Dr. Shepherd.

Thornton has offered a referral form for the MRI which was sent to collegial review as evidence of a delay. (Doc. 69-2, p. 12). The form does not indicate whether the procedure was approved or denied or whether there was any delay by Dr. Shepherd. What the form does show is that Dr. Shepherd, along with Dr. Johnson, recommended on March 27, 2012, that Plaintiff receive the MRI requested by Dr. Umana (Doc. 69-2, p. 12). Thornton seems to suggest in his response that Shepherd was the individual ultimately responsible for approving the MRI and that the MRI initially was denied by collegial review, but there is no evidence to support this claim. Wexford Health Sources Incorporated, not Dr. Shepherd, was the entity that approved Thornton's MRI on April 5, 2012, after Plaintiff's appointment with Dr. Umana that day where Dr. Umana again requested an MRI (Doc. 69-3, p. 18). Further, Shepherd noted in the medical records as of March 29, 2012, that the request for the MRI was approved by collegial, not denied, and there is no evidence that contradicts the records.

The records in evidence indicate that Dr. Shepherd signed the referral request on March 27, 2012, that Dr. Umana signed the request on April 5, 2012, and that the request was approved by Wexford that same day. Plaintiff received his MRI a mere five days later on April 10, 2012. While the final approval from collegial review took place two weeks after Dr. Umana's initial request, there is no evidence that it was Dr. Shepherd who caused the delay or that he initially denied the request.

Similarly, there is not any evidence that Thornton was harmed or caused additional pain from the delay. Thornton argues in his brief that Dr. Umana believed he might require additional surgery and requested the MRI to determine if additional surgery was necessary. But there is no indication in the record that Dr. Umana made any additional findings based on the MRI results. Thornton did not receive additional surgery, nor has he offered any evidence to indicate that additional surgery was necessary. To succeed on a claim that the delay in Thornton's MRI rises to the level of deliberate indifference, Thornton must offer some degree of evidence that the delay from March 22, 2012, to April 10, 2012, caused some degree of harm or was detrimental, and Thornton offers none. There is no indication that he suffered any additional pain and harm from the delay in the MRI, as, between the date the MRI was first recommended and the date Thornton received it, Thornton was continually seen by doctors and medical staff in the healthcare unit and also received additional follow-up care from Dr. Umana. Accordingly, the Court finds no evidence that Shepherd was deliberately indifferent in scheduling Plaintiff's MRI.

It is of some concern that there is a lack of evidence in the record as to when Dr. Umana reviewed the MRI and what his diagnosis was after reviewing the MRI. In the last entry the Court has from Dr. Umana, on May 3, 2012, he notes that the MRI results were still pending and that he would see Plaintiff in three months (Doc. 59-10). Umana also notes that Plaintiff might need muscle surgery (*Id*.). There are no further notes from Dr. Umana in the record and Thornton indicates in his response and deposition that he did not see Umana again (Doc. 59-2, p. 14-15). Thornton testified that he would have to follow up with Umana in order to receive glasses (*Id*. at p. 15), but he ultimately received glasses from the prison in August 2012. While it is possible that he could have pursued a claim for deliberate indifference if both his follow-up with Dr. Umana was cancelled by the prison but Dr. Umana reviewed the MRI and found he needed additional surgery, Thornton does not allege that this happened in his amended complaint, nor is there any evidence to support this claim in the current record. His amended complaint is very specific in alleging that Shepherd was deliberately indifferent in delaying his MRI from March 22, 2012 to April 10, 2012, which Plaintiff alleged caused him pain for the twenty additional days he went without the MRI. There is no evidence in the record that Shepherd delayed the MRI, and Plaintiff has failed to offer any evidence that the delay was detrimental.

Turning to Plaintiff's complaints of pain caused by the delay in removing the stitches from Plaintiff's eye lid, the Court finds no evidence of deliberate indifference on Shepherd's part. The medical records indicate that Plaintiff was seen on a daily basis by

staff during his stay in the healthcare unit until he was released on April 18, 2012. He also admitted in his deposition that he received pain medication every time that he asked and the medical records indicate that he was prescribed Tylenol for his pain. While Shepherd did not remove Plaintiff's stitches, it was Dr. Umana who was treating Plaintiff for his eye injury. There is no indication in the records that Umana instructed Shepherd to remove the stitches, nor is there any indication in Umana's April 5, 2012, medical notes that the stitches were to be removed by the prison healthcare unit prior to Plaintiff's next follow-up appointment. The stitches were ultimately removed by Umana on May 3, 2012. As Defendant Shepherd points out, there is simply no evidence that it was medically necessary to remove the stitches prior to May 3, 2012. Thus, the Court finds no evidence of deliberate indifference in Shepherd failing to remove the stitches prior to their removal on May 3, 2012. Defendant Shepherd's motion for summary judgment is **GRANTED**.

### B. Michael Atchison and Salvador Godinez

Thornton similarly alleges that Defendants Atchison and Godinez acted with deliberate indifference and delayed his MRI and the removal of his stitches. The Court disagrees. There is no evidence that they delayed or instructed anyone to delay scheduling Plaintiff's MRI or removing his stitches. Plaintiff filed an emergency grievance on April 30, 2012, regarding both his MRI and the pain associated with his stitches. Both Defendants Atchison and Godinez reviewed Plaintiff's grievance. However, at the time that the Defendants reviewed Plaintiff's grievance, learning of his

complaints about his care, Plaintiff had already received his MRI. Thornton offers no evidence that either Defendant delayed his MRI in any way.

As to Thornton's complaints of pain from his stitches, the evidence shows that both Atchison and Godinez, through the ARB, contacted the healthcare unit to determine the status of Plaintiff's care. The grievance officer noted that Thornton had received his MRI and that his appointment with Dr. Umana, previously scheduled for June, was moved to early May 2012 (Doc. 62-3, p. 3). As to Plaintiff's stitches, he was referred to Dr. Umana, his treating physician, for a medical determination as to whether they should be removed (*Id.*). Further, the grievance officer noted that Plaintiff, during his time in the healthcare unit, was under constant supervision by medical staff (*Id.*). Similarly, in denying Plaintiff's grievance at the ARB level, the healthcare unit was notified and the ARB was informed that Plaintiff had been seen by both the healthcare unit and Marion Eye Center on numerous occasions and that Plaintiff ultimately received eye glasses for his condition (*Id.* at p. 2). Thus, by the time that Plaintiff's complaints were reviewed by both Atchison and Godinez, it appeared from medical records and contact with the healthcare unit that Plaintiff was being treated for his condition and for the pain associated with it. As non-medical providers in this case, both Defendants were allowed to rely on purported care that he was receiving from the healthcare unit. *See Johnson v. Doughty*, **433 F.3d 1001, 1010 (7th Cir. 2006);** *Hayes v. Snyder*, **546 F.3d 516, 527 (7th Cir. 2008) (citing** *Greeno v. Daley*, **414 F.3d 645, 655-56 (7th Cir. 2005));** *Greeno v. Daley*, **414 F.3d 645, 655 (7th Cir. 2005) (prison official who**

**reviewed complaints and verified with staff that inmate was receiving treatment was not deliberately indifferent);** *Hayes***, 546 F.3d at 527 (no deliberate indifference when grievance officer investigated and referred the complaint to medical staff);** *Spruill v. Gillis***, 372 F.3d 218, 236 (7th Cir. 2004) (non-medical official is able to rely on the belief that a prisoner is in capable hands when under the care of medical experts).** As such, the Court finds no evidence of deliberate indifference on the part of either Defendant and **GRANTS** summary judgment as to both Defendants Atchison and Godinez.

## CONCLUSION

Accordingly, the Court **GRANTS** the summary judgment motions filed by both Shepherd (Docs. 58 and 59) and Atchison and Godinez (Docs. 61 and 62). The Clerk of Court shall enter judgment in favor of Defendants Shepherd, Atchison, and Godinez and against Plaintiff Altai Thornton at the close of the case. The only claims which remain in this case are the claims against Eric Johnson who has not been served. No other claims remain set for trial. On November 22, 2016, Magistrate Judge Williams entered a notice of impending dismissal as to Defendant Johnson (Doc. 75), giving Plaintiff until December 13, 2016, to take action to effectuate service. This case is currently set for jury trial on December 12, 2016. The trial is **CONTINUED** to January 9, 2017, subject to the outcome of the notice of impending dismissal.

**IT IS SO ORDERED**.
DATED: December 7, 2016

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**
